1  **RISE LAW FIRM, P.C.**
   ELIOT J. RUSHOVICH (SBN 252343)
2  LISA WATANABE-PEAGLER (SBN 258182)
   ELISSA A. WAIZMAN (SBN 329959)
3  8383 Wilshire Boulevard, Suite 800
   Beverly Hills, CA 90211
4  Telephone:  (310) 728-6588
   Facsimile:  (310) 728-6560
5  eliot@riselawfirm.com
   lisa@riselawfirm.com
6  elissa@riselawfirm.com

7  Attorneys for Plaintiff
   STEVE FLORES

8

Electronically FILED by
Superior Court of California,
County of Los Angeles
10/10/2025 4:00 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Ruiz, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| STEVE FLORES, an individual, | Case No.  25STCV29755 |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | 1. **DISCRIMINATION IN VIOLATION OF THE FEHA – CAL. GOVT. CODE § 12940 ET SEQ.;** |
| AT&T MOBILITY SERVICES LLC, a Delaware corporation; MICHELLE BOGGIO, an individual; and DOES 1 through 10, inclusive, | 2. **RETALIATION IN VIOLATION OF THE FEHA – CAL. GOVT. CODE § 12940 ET SEQ.;** |
| Defendants. | 3. **FAILURE TO PREVENT DISCRIMINATION AND RETALIATION IN VIOLATION OF THE FEHA – CAL. GOVT. CODE § 12940 ET SEQ.;** |
| | 4. **FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION OF THE FEHA – CAL. GOVT. CODE § 12940 ET SEQ.;** |
| | 5. **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF THE FEHA – CAL. GOVT. CODE § 12940 ET SEQ.;** |
| | 6. **RETALIATION IN VIOLATION OF THE CFRA;** |
| | 7. **DEFAMATION PER SE; AND** |
| | 8. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY.** |
| | **[DEMAND FOR JURY TRIAL]** |

Plaintiff Steve Flores ("**Plaintiff**") hereby brings his Complaint for Damages against Defendants AT&T Mobility Services LLC (the "**Company**"), Michelle Boggio ("**Boggio**"), and Does 1 through 50, inclusive, and alleges the following based on knowledge as to himself and his known acts, and on information and belief as to all other matters:

## I.

## PARTIES

1.     At the relevant times mentioned herein, Plaintiff was employed by the Company. Plaintiff performed work for the Company in Los Angeles County. The unlawful conduct alleged to have been committed occurred in Los Angeles County. Plaintiff is, and at the relevant times mentioned herein was, a resident of Los Angeles County.

2.     At the relevant times mentioned herein, the Company was a Delaware corporation conducting business in Los Angeles County with its principal place of business located at 1025 Lenox Park Boulevard NE, Atlanta, GA 30319.

3.     At the relevant times mentioned herein, Boggio an individual was employed by the Company. Boggio is, and at the relevant times mentioned herein was, a resident of Los Angeles County.

4.     At the relevant times mentioned herein, the Company was an "employer" of Plaintiff, as such term is defined under the California Fair Employment and Housing Act (as amended), in that it regularly employed five (5) or more persons.  Therefore, the Company was subject to the FEHA.  In addition, at the relevant times mentioned herein, the Company was an "employer" of Plaintiff, as such term is defined under the California Family Rights Act ("CFRA") in that it had 5 or more employees on the payroll during each of any 20 or more calendar weeks in the current calendar year or the preceding calendar year.  Therefore, the Company was subject to the CFRA.

5.     Plaintiff is ignorant of the true names and capacities of the Company sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of said defendants when the same has been ascertained. Each of the fictitiously named defendants is responsible in some manner for the acts

- 1 -

complained of herein. Unless otherwise stated, all references to named defendants shall include DOE defendants as well.

## II.

### JURISDICTION AND VENUE

6.     Jurisdiction and venue are proper in this Court because the unlawful conduct alleged to have been committed occurred in Los Angeles County and the Company were and/or are residents of Los Angeles County or are doing or did business in Los Angeles County. *See also* Govt. Code § 12965(b) (stating venue is appropriate in, *inter alia*, any county in which the unlawful conduct is alleged to have been committed or within the county of defendant's residence or principal office).

7.     The amount in controversy in this matter exceeds the sum of $25,000.00, exclusive of interest and costs.

## III.

### FACTUAL ALLEGATIONS

8.     Plaintiff was employed by the Company for approximately 16 years, beginning around October 2008 as a field representative. When corporate restructuring eliminated Plaintiff's field representative position, the Company offered him the choice between accepting a severance package or transitioning to a sales consultant position at a corporate retail store. Plaintiff decided to accept the sales consultant position and began working in this capacity at a retail store in Northridge in or around 2013 or 2014. Due to Plaintiff's exceptional performance he was promoted to Assistant Store Manager in or around 2019. Thereafter, Plaintiff successfully helped manage multiple other stores including Woodland Hills, North Hollywood, and ultimately the company store located at 14500 Roscoe Boulevard Unit 3 Panorama City, CA 91402 (the "**Store**"). Plaintiff worked as an Assistant Manager at the Store until the unlawful termination of his employment on or about April 5, 2025.

9.     During Plaintiff's tenure as Assistant Manager at the Store, he encountered significant challenges managing Kevin Archilla ("**Archilla**"), a Sales Consultant with a well-documented history of insubordination, disruptive behavior, and conflicts with management personnel and other employees at various stores. Even though Archilla had established a reputation as a "hothead" and was known to be

- 2 -

problematic within the Company, he was protected by the union. Plaintiff and Archilla had previously worked together as sales consultants at the Northridge location, where they maintained a cordial professional relationship. However, after Plaintiff's promotion and assignment to various management positions, their interactions diminished until they were eventually assigned to the Store together. There, Archilla's confrontational attitude manifested towards Plaintiff.

10.    In or around late 2023, Plaintiff experienced the first of two workplace incidents with Archilla. During this incident, in accordance with his duties as Assistant Manager, Plaintiff assigned Archilla a work-related task. Rather than complying, Archilla was insubordinate, refused to follow Plaintiff's directive, got in Plaintiff's face, and repeatedly asked "What are you gonna do about it?" in an antagonistic manner. Plaintiff calmly asked Archilla to get out of his face and told him he needed to leave, but Archilla continued his hostile behavior for several minutes until he eventually departed of his own accord. This incident occurred on the sales floor in the presence of other employees, including Daniel Lopez ("**Lopez**").

11.    Subsequently, per the Company's policy Plaintiff reported the incident to Store Manager Daisy Chavez ("**Chavez**"). However, Chavez failed to document it despite her duty to do so. Archilla later apologized to Plaintiff for his behavior and the situation blew over, so Plaintiff never followed up with Chavez about documenting his file.

12.    Approximately one year later, in late 2024, a second incident with Archilla occurred. As part of his managerial duties, Plaintiff was responsible for following up with customers regarding sales transactions to ensure satisfaction and address any service or installation issues. During this period, Archilla sold television and internet services to a customer, but the installer failed to show up – something that happened from time to time. When Plaintiff called the customer to follow-up, he was unable to reach her because her voicemail had not been set up. Eventually, Plaintiff got a hold of the customer, and she expressed frustration towards the Company. This particular sale held special significance for Archilla, as he historically struggled with television and internet sales. When Archilla learned that the installation failed to occur and that the customer was upset, he directed his anger toward Plaintiff, inappropriately blaming him for the failed installation and demanding that he should have been

more proactive in preventing the issue. When Plaintiff explained that he had indeed attempted to contact the customer but was unable to leave a voicemail, Archilla refused to accept his explanation and, once again, escalated his behavior to an unacceptable level of disrespect and insubordination. Plaintiff directed Archilla to clock out and leave the premises for the remainder of the workday, however, he defiantly refused. Another Assistant Manager, Eddie Tinajero ("**Tinajero**") and an employee, William Garcia ("**Garcia**"), both witnessed Archilla's unprofessional conduct from their positions at the computer workstation. Eventually, Tinajero had to assist Plaintiff in getting Archilla to leave for the day.

13.     Following the incident, Boggio, the District Manager, contacted Plaintiff and instructed him to document it, stating she wanted to use it to terminate Archilla. Boggio specifically instructed Plaintiff to exaggerate his account and claim that he "feared for his life." Boggio had an antagonistic and bullying management style and even though Plaintiff felt pressured to satisfy her, he refused to embellish what had happened, stating he would only tell the truth.

14.     During a subsequent investigation into the incident, Plaintiff provided a truthful account of what had occurred without exaggeration. In his statement to the investigator, Plaintiff honestly characterized Archilla as unpredictable and volatile while also acknowledging that he could also be sweet sometimes depending on the day and his mood which affected what version you got.

15.     Upon learning about Plaintiff's statements to the investigator, Boggio expressed significant displeasure to Plaintiff, questioning why he had mentioned Archilla's occasional pleasant behavior and failed to fabricate the threat to his life as she had instructed. Plaintiff merely responded that all he did was tell the truth.

16.     Sometime thereafter, the investigator contacted Plaintiff again, this time to discuss the 2023 incident with Archilla. During their conversation, Plaintiff learned that Archilla had falsely claimed that Plaintiff had yelled and cursed at him on the salesfloor, allegations that Plaintiff wholeheartedly denied. Plaintiff explained to the investigator that he had not engaged in any such unprofessional behavior but had simply addressed Archilla's insubordination by sending him home. Plaintiff did not hear back from the investigator or anyone from the Company about the investigation thereafter.

17.     In addition to his in-store management responsibilities, Plaintiff conducted door-to-door

- 4 -

sales, requiring extensive walking and physical exertion. As a result, Plaintiff developed severe arthritis in his hip. On or about November 1, 2024, Plaintiff began a short-term disability / CFRA medical leave of absence due to severe arthritis, stress, and related conditions. Plaintiff was initially scheduled to return in January 2025, but his leave was extended for an additional three months until April 2025. Plaintiff properly filed a workers' compensation claim for his work-related medical condition.

18.     Within one week of Plaintiff going on medical leave, Boggio posted and filled his position with a new Assistant Manager, Eric Revuelta ("**Revuelta**").

19.     In or around the end of March or beginning of April 2025, Plaintiff received a call from Edberg Giron ("**Giron**"), the new Store Manager (who had replaced Chavez). Giron stated that corporate had indicated that if he did not return to work by April 5, 2025, it would be treated as job abandonment. Neither Giron nor anyone else at the Company contacted Plaintiff to engage in an interactive process or otherwise initiate a discussion regarding possible alternative accommodations.

20.     Despite continuing to experience pain from his disabilities, Plaintiff returned to work on or about April 5, 2025 to avoid job abandonment. On the same day Plaintiff returned to work, after working for approximately one hour, the Company terminated his employment. Giron stated that the termination was based on the 2023 incident with Archilla, claiming there was a witness who said Plaintiff had been "talking back" to Archilla. Giron admitted to Plaintiff that he believed Plaintiff's version of events but stated "this is what Boggio wants."

21.     Notably, Archilla had been terminated while Plaintiff was on medical leave due to a separate incident with yet another manager.

22.     Plaintiff alleges that the Company discriminated and retaliated against him based on his disabilities (actual and/or perceived) and for requesting reasonable accommodations for his disabilities. Specifically, the Company terminated Plaintiff's employment based on his disabilities (actual and/or perceived) and for requesting reasonable accommodations related thereto the same day he returned from a short-term disability / CFRA medical leave of absence for pretextual reasons.

///

### Managing Agents

23.     The Company's conduct, as described in paragraphs 8-22 above, was performed or ratified by managing agents of the Company including, but not limited to, Michelle Boggio (the "Managing Agents"). The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the Company's internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

24.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation. Among other things, the Managing Agents discriminated and retaliated against Plaintiff based on his disabilities (actual and/or perceived) and for requesting reasonable accommodations for his disabilities. Specifically, the Company terminated Plaintiff's employment based on his disabilities (actual and/or perceived) and for requesting reasonable accommodations related thereto the same day he returned from a short-term disability / CFRA medical leave of absence for pretextual reasons.

25.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

26.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

///

## IV.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

27.     Prior to the initiation of this lawsuit, Plaintiff filed a complaint against defendant with the California Civil Rights Department ("**CCRD**") pursuant to section 12900 *et seq.* of the California Government Code alleging the claims described in this Complaint.  On October 10, 2025, the CCRD issued a "right to sue" letter.  True and correct copies of the administrative complaint and the "right to sue" letter are attached hereto collectively as **Exhibit A**.  All conditions precedent to the institution of this lawsuit have been fulfilled.  This action is filed within one year of the date that the CCRD issued its right to sue letters.

## V.

## FIRST CAUSE OF ACTION

### (Discrimination in Violation of the FEHA)

### (On Behalf of Plaintiff Against the Company)

28.     Plaintiff realleges and incorporates by reference paragraphs 1-27, inclusive, of this Complaint as though fully set forth herein.

29.     As set forth in paragraphs 8-22 above, the Company discriminated against Plaintiff based on his physical disabilities (actual and/or perceived) in violation of the FEHA through numerous acts including, without limitation, terminating Plaintiff's employment for pretextual reasons based on his physical disabilities (actual and/or perceived) and for requesting reasonable accommodation for those disabilities the same day he returned from and approved short-term disability / CFRA medical leave of absence. Such acts constitute unlawful discrimination based in part on Plaintiff's disabilities in violation of California Government Code section 12940(a).

30.     As a proximate result of the Company's conduct, Plaintiff suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety. The amount of Plaintiff's damages will be ascertained at trial.

31.     The Company's conduct, as described in paragraphs 8-22 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the Company's internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

32.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation. Among other things, the Managing Agents discriminated and retaliated against Plaintiff based on his mental disabilities and for requesting reasonable accommodations for his disabilities. Specifically, the Company terminated Plaintiff's employment based on his disabilities (actual and/or perceived) and for requesting reasonable accommodations related thereto the same day he returned from a short-term disability / CFRA medical leave of absence for pretextual reasons.

33.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

34.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

35.     The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing Plaintiff in an action brought under its provisions. Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action. Plaintiff has incurred and will continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and costs.

- 8 -

36.  Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## VI.

### SECOND CAUSE OF ACTION

### (Retaliation in Violation of the FEHA)

### (On Behalf of Plaintiff Against the Company)

37.  Plaintiff realleges and incorporates by reference paragraphs 1-36, inclusive, of this Complaint as though fully set forth herein.

38.  California Government Code section 12940(m)(2) makes it an unlawful employment practice for an employer to "retaliate or otherwise discriminate against a person for requesting an accommodation for a disability, regardless of whether the request was granted."

39.  As set forth in paragraphs 8-22 above, Plaintiff was disabled while employed by the Company.   Plaintiff's disabilities (his arthritis, stress, and related conditions) affected his musculoskeletal and nervous systems and limited his ability to perform major life activities, including, without limitation, his ability to work.  The Company was made aware of Plaintiff's disabilities because Plaintiff informed the Company and its management about such physical disabilities and asked for reasonable accommodations during his employment, *i.e.*, a short-term disability / CFRA medical leave of absence.

40.  The Company retaliated against Plaintiff based on his disabilities (actual and/or perceived) and accommodation requests in violation of the FEHA by unjustifiably and unlawfully terminating his employment for pretextual reasons the same day he returned from his approved medical leave.

41.  As a proximate result of the Company's conduct, Plaintiff suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety. The amount of Plaintiff's damages will be ascertained at trial.

- 9 -

42.    The Company's conduct, as described in paragraphs 8-22 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the Company's internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

43.    In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation. Among other things, the Managing Agents discriminated and retaliated against Plaintiff based on his mental disabilities and for requesting reasonable accommodations for his disabilities. Specifically, the Company terminated Plaintiff's employment based on his disabilities (actual and/or perceived) and for requesting reasonable accommodations related thereto the same day he returned from a short-term disability / CFRA medical leave of absence for pretextual reasons.

44.    In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

45.    In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

46.    The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing Plaintiff in an action brought under its provisions. Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action. Plaintiff has incurred and will continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and costs.

47.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## VII.

## THIRD CAUSE OF ACTION

### (Failure to Prevent Discrimination and Retaliation in Violation of the FEHA)

### (On Behalf of Plaintiff Against the Company)

48.    Plaintiff realleges and incorporates by reference paragraphs 1-47, inclusive, of this Complaint as though fully set forth herein.

49.    California Government Code section 12940(k) makes it an unlawful employment practice for an employer to "fail to take all reasonable steps to prevent discrimination … from occurring." This provision also makes it unlawful for an employer to fail to prevent retaliation. *See, e.g., Ortiz v. Georgia Pacific*, 973 F. Supp. 2d 1162, 1184 (E.D. Cal. 2013) (citing *Taylor v. City of Los Angeles Dep't of Water & Power*, 144 Cal. App. 4th 1216, 1240 (2006)). The Company violated this provision by failing to prevent discrimination and retaliation against Plaintiff, as set forth in paragraphs 8-22 above. The Company knew or should have known of the discrimination and retaliation against Plaintiff yet failed to prevent such conduct or take any prompt or adequate remedial action.

50.    As a proximate result of the Company's conduct, Plaintiff suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety. The amount of Plaintiff's damages will be ascertained at trial.

51.    The Company's conduct, as described in paragraphs 8-22 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the Company's internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

- 11 -

52.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation. Among other things, the Managing Agents discriminated and retaliated against Plaintiff based on his mental disabilities and for requesting reasonable accommodations for his disabilities. Specifically, the Company terminated Plaintiff's employment based on his disabilities (actual and/or perceived) and for requesting reasonable accommodations related thereto the same day he returned from a short-term disability / CFRA medical leave of absence for pretextual reasons.

53.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

54.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

55.     The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing Plaintiff in an action brought under its provisions. Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action. Plaintiff has incurred and will continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and costs.

56.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

///

## VIII.

## FOURTH CAUSE OF ACTION

### (Failure to Accommodate Disability in Violation of the FEHA)

### (On Behalf of Plaintiff Against the Company)

57.    Plaintiff realleges and incorporates by reference paragraphs 1-56, inclusive, of this Complaint as though fully set forth herein. California Government Code section 12940(m) makes it unlawful "[f]or an employer or other entity . . . to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee."

58.    As set forth in paragraphs 8-22 above, Plaintiff was disabled while employed by the Company.    Plaintiff's disabilities (his arthritis, stress, and related conditions) affected his musculoskeletal and nervous systems and limited his ability to perform major life activities, including, without limitation, his ability to work.  The Company was made aware of Plaintiff's disabilities because Plaintiff informed the Company and its management about such physical disabilities and asked for reasonable accommodations during his employment, *i.e.*, a short-term disability / CFRA medical leave of absence.

59.    The Company retaliated against Plaintiff based on his disabilities (actual and/or perceived) and accommodation requests in violation of the FEHA by unjustifiably and unlawfully terminating his employment for pretextual reasons the same day he returned from his approved medical leave.

60.    Although the Company seemingly appeared to accommodate Plaintiff by allowing him to take a few months of leave, it pressured him to return from his leave prematurely and then unjustifiably and unlawfully terminated his employment for pretextual reasons the same day he returned from his approved medical leave. The Company cannot demonstrate that Plaintiff's reasonable accommodations would have imposed an undue hardship on the operation of its business, and therefore the Company's failure to accommodate Plaintiff was unlawful.

61.    As a proximate result of the Company's conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according

- 13 -

COMPLAINT FOR DAMAGES

to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety. The amount of Plaintiff's damages will be ascertained at trial.

62.     The Company's conduct, as described in paragraphs 8-22 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the Company's internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

63.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation. Among other things, the Managing Agents discriminated and retaliated against Plaintiff based on his mental disabilities and for requesting reasonable accommodations for his disabilities. Specifically, the Company terminated Plaintiff's employment based on his disabilities (actual and/or perceived) and for requesting reasonable accommodations related thereto the same day he returned from a short-term disability / CFRA medical leave of absence for pretextual reasons.

64.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

65.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or, at least, without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

66.     The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing Plaintiff in an action brought under its provisions. Plaintiff has employed and will continue to

employ attorneys for the initiation and prosecution of this action. Plaintiff has incurred and will continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and costs.

67.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## IX.

## FIFTH CAUSE OF ACTION

### (Failure to Engage in the Interactive Process in Violation of the FEHA)

### (On Behalf of Plaintiff Against the Company)

68.     Plaintiff realleges and incorporates by reference paragraphs 1-67, inclusive, of this Complaint as though fully set forth herein.

69.     California Government Code section 12940(n) makes it unlawful "[f]or an employer or other entity covered by this part to fail to engage in a timely, good faith interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."

70.     California Government Code section 12926.1(e) states, "The Legislature affirms the importance of the interactive practice between the applicant or employee and the employer in determining a reasonable accommodation, as the requirement has been articulated by the Equal Employment Opportunity Commission in its interpretive guidance of the Americans with Disabilities Act."

71.     As set forth in paragraphs 8-22 above, Plaintiff was disabled while employed by the Company.    Plaintiff's disabilities (his arthritis, stress, and related conditions) affected his musculoskeletal and nervous systems and limited his ability to perform major life activities, including, without limitation, his ability to work. The Company was made aware of Plaintiff's disabilities because Plaintiff informed the Company and its management about such physical disabilities and asked for reasonable accommodations during his employment, *i.e.*, a short-term disability / CFRA medical leave of absence.

72.     As set forth in paragraphs 8-22 above, Plaintiff informed the Company of his disabilities as well as his need for reasonable accommodation. Rather than engaging in a timely, good faith process with Plaintiff, the Company seemingly appeared to accommodate Plaintiff by allowing him to take a few months of leave, but then it pressured him to return from his leave prematurely and then unjustifiably and unlawfully terminated his employment for pretextual reasons the same day he returned from his approved medical leave.

73.     As a proximate result of the Company's conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety. The amount of Plaintiff's damages will be ascertained at trial.

74.     The Company's conduct, as described in paragraphs 8-22 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the Company's internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

75.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation. Among other things, the Managing Agents discriminated and retaliated against Plaintiff based on his mental disabilities and for requesting reasonable accommodations for his disabilities. Specifically, the Company terminated Plaintiff's employment based on his disabilities (actual and/or perceived) and for requesting reasonable accommodations related thereto the same day he returned from a short-term disability / CFRA medical leave of absence for pretextual reasons.

76.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for

- 16 -

the law and Plaintiff's rights.

77.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

78.     The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing Plaintiff in an action brought under its provisions. Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action. Plaintiff has incurred and will continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and costs.

79.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## X.

### SIXTH CAUSE OF ACTION

### (Violation of the CFRA)

### (On Behalf of Plaintiff Against the Company)

80.     Plaintiff realleges and incorporates by reference paragraphs 1-79, inclusive, of this Complaint as though fully set forth herein.

81.     At all times herein mentioned, the FEHA, Government Code sections 12900-12996, was in full force and effect and was binding on the Company.  This included Government Code section 12945.2 *et seq.* which is commonly referred to as the California Family Rights Act ("CFRA").  CFRA requires that the Company refrain from discriminating or retaliating against any employee on the basis of that employee's need to take leave to tend to his or her own serious medical condition or having taken such leave (*see* Government Code §§ 12945.2 (a) and (l)).

82.     Pursuant to the CFRA, the Company was required to allow Plaintiff up to twelve (12) work-weeks of leave (which could be intermittent leave) for a qualifying leave, the right to preservation of benefits during the leave period, the right to reinstatement upon completion of the protected leave,

- 17 -

and the prohibition against retaliation for exercising Plaintiff's rights.

83.    At the relevant times mentioned herein, Plaintiff was eligible to take leave under CFRA, as he was employed by the Company for at least a year and had worked more than 1250 hours in the immediately preceding 12 months.   Due to Plaintiff's serious medical conditions and/or physical disabilities, including, without limitation, his arthritis, stress, and related conditions, he required continuing treatment and/or supervision by his treating physicians.

84.    Plaintiff exercised his right to take CFRA leave by providing notice to the Company of his serious medical conditions and/or physical disabilities and the need for certain leave time.

85.    Plaintiff believes and thereon alleges that the Company retaliated against him because he exercised his right to take CFRA leave. As set forth in paragraphs 8-22 above, the Company seemingly appeared to accommodate Plaintiff by allowing him to take a few months of leave, but then it pressured him to return from his leave prematurely and then unjustifiably and unlawfully terminated his employment for pretextual reasons the same day he returned from his approved medical leave.

86.    As a proximate result of the Company's conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

87.    The Company's conduct, as described in paragraphs 8-22 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the Company's internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

88.    In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination based upon his disabilities. Among other things, the Managing Agents discriminated and retaliated against Plaintiff

based on his physical disabilities (actual and/or perceived) and for requesting reasonable accommodation for those physical disabilities and failed to engage in the interactive process in good faith or accommodate his disabilities. Specifically, the Company terminated Plaintiff's employment based on his disabilities (actual and/or perceived) and for requesting reasonable accommodations related thereto the same day he returned from a short-term disability / CFRA medical leave of absence for pretextual reasons.

89.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

90.     In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

91.     CFRA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing Plaintiff in an action brought under its provisions. Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action. Plaintiff has incurred and will continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and costs.

92.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

///

## XI.

### SEVENTH CAUSE OF ACTION

#### (Defamation Per Se)

#### (On Behalf of Plaintiff Against All Defendants)

93.     Plaintiff realleges and incorporates by reference paragraphs 1-92, inclusive, of this Complaint as though fully set forth herein.

94.     Plaintiff is informed and believes that the Company, Boggio, and each of them, negligently, recklessly, and/or intentionally caused a publication of defamation, of and concerning, Plaintiff to third persons including, but not limited to, Giron.  Specifically, Boggio verbally made false, private statements to third parties that Plaintiff had been "talking back" to Archilla. This and other similar false statements expressly and impliedly stated that Plaintiff had engaged in terminable offenses which was not true. Indeed, even Giron admitted that he believed Plaintiff. This defamatory statement was understood to be about Plaintiff and understood to be assertions of fact, and not opinions.

95.     Plaintiff alleges that these false statements were defamatory on their face because they exposed him to hatred, contempt, ridicule or obloquy or caused him to be shunned or avoided and had a tendency to injure Plaintiff in his occupation, profession or employment because they were about the reasons for, and the circumstances relating to, the end of his employment with the Company.  At a minimum, Plaintiff alleges that the false statements were defamatory based on the facts and circumstances in which they were said and to whom.  Among other things, the Company's District Manager made these false, defamatory statements to third parties, Plaintiff's direct supervisor, in which Plaintiff's reputation and good name are critical for employment and employability.

96.     The Company made these statements intentionally knowing they were false and therefore the statements were made with hatred and ill will towards Plaintiff with the design and intent to injure Plaintiff, Plaintiff's good name, reputation, his employment and employability.

97.     The Company published these statements not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy his reputation.  Therefore, Plaintiff alleges that no privilege exists to protect any of

the Company from liability on any of these publications or republications.

98.     Plaintiff is informed, and believes, that these false and defamatory will continue to be published by the Company, and will be foreseeably republished by their recipients, all to the ongoing harm to Plaintiff's business, professional and personal reputations. Plaintiff seeks redress for all foreseeable republications, including his own compelled self-publication of these defamatory statements.

99.     As a direct and proximate result of the publication and republication of these defamatory statements by the Company, Plaintiff has suffered, and will continue to suffer, injury to his personal, business and professional reputation including suffering from physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety as well as significant economic loss in the form of lost wages and future earnings. The amount of Plaintiff's damages will be ascertained at trial.

100.    The Company's conduct, as described in paragraphs 8-22 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the Company's internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

101.    In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation. Among other things, the Managing Agents discriminated and retaliated against Plaintiff based on his mental disabilities and for requesting reasonable accommodations for his disabilities. Specifically, the Company terminated Plaintiff's employment based on his disabilities (actual and/or perceived) and for requesting reasonable accommodations related thereto the same day he returned from a short-term disability / CFRA medical leave of absence for pretextual reasons.

102.    In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for

- 21 -
COMPLAINT FOR DAMAGES

the law and Plaintiff's rights.

103.    In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

104.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## XI.

## EIGTH CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy)

### (On Behalf of Plaintiff Against The Company)

105.    Plaintiff realleges and incorporates by reference paragraphs 1-107, inclusive, of this Demand as though fully set forth herein.

106.    As set forth in paragraphs 8-22 above, the Company terminated Plaintiff's employment in violation of important and well-established public policies, as set forth in various state statutes and Constitutional provisions including, but not limited to, the FEHA and the CFRA.

107.    As a proximate result of the Company' conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety. The amount of Plaintiff's damages will be ascertained at the arbitration hearing.

108.    The Company' conduct, as described in paragraphs 8-22 above, was performed or ratified by managing agents of the Company's Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company' business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that

affect the Company' internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

109.    In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful conduct. Among other things, the Managing Agents discriminated and retaliated against Plaintiff based on his physical disabilities (actual and/or perceived) and for requesting reasonable accommodation for those physical disabilities and failed to engage in the interactive process in good faith or accommodate his disabilities. Specifically, the Company terminated Plaintiff's employment based on his disabilities (actual and/or perceived) and for requesting reasonable accommodations related thereto the same day he returned from a short-term disability / CFRA medical leave of absence for pretextual reasons.

110.    In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

111.    In committing the foregoing acts as set forth in paragraphs 8-22 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

112.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## X.

## PRAYER FOR RELIEF

1.    For general damages, including emotional distress damages, according to proof on each cause of action for which such damages are available.

2.    For special damages, according to proof on each cause of action for which such damages are available.

COMPLAINT FOR DAMAGES

3.      For compensatory damages, including emotional distress damages, according to proof on each cause of action for which such damages are available.

4.      For punitive damages, according to proof on each cause of action for which such damages are available.

5.      For appropriate permanent injunctive relief, including, without limitation, that the Company be required to (a) post visibly in appropriate locations within its business notices explaining to its then current employees that it has violated one or more of the laws cited herein (and the nature of such violations); (b) provide specialized training to its management and employees regarding the laws cited herein; and (c) discipline the applicable managers and employees who participated in the wrongful acts hereunder.

6.      For appropriate declaratory relief, including, without limitation, a declaration that the Company violated the laws referenced hereunder.

7.      For prejudgment interest and post-judgment interest according to law.

8.      For reasonable attorneys' fees incurred in this action pursuant to the FEHA, the CFRA, and California Code of Civil Procedure § 1021.5.

9.      For costs of suit incurred in this action.

10.     For such other and further relief that the Court deems proper and just.


Dated: October 10, 2025                    RISE LAW FIRM, PC


By: _____
    ELIOT J. RUSHOVICH
    LISA M. WATANABE-PEAGLER
    ELISSA A. WAIZMAN

    Attorneys for Plaintiff STEVE FLORES

COMPLAINT FOR DAMAGES

**DEMAND FOR JURY TRIAL**

Plaintiff Steve Flores hereby demands a trial by jury on all causes of action alleged herein in this Complaint for Damages.

Dated:  October 10, 2025               RISE LAW FIRM, PC


By: _____
ELIOT J. RUSHOVICH
LISA M. WATANABE-PEAGLER
ELISSA A. WAIZMAN

Attorneys for Plaintiff STEVE FLORES

- 25 -

# EXHIBIT A

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

October 10, 2025

Steve Flores
c/o Rise Law Firm, 8383 Wilshire Blvd., Suite 800
Beverly Hills, CA 90211

RE:    **Notice to Complainant**
CRD Matter Number: 202510-31662510
Right to Sue: Flores / AT&T Mobility Services LLC et al.

Dear Steve Flores:

Attached is a copy of your complaint of discrimination filed with the Civil Rights
Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. If you do not have an attorney, you must serve the complaint yourself.
Please refer to the attached Notice of Case Closure and Right to Sue for information
regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of
Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

October 10, 2025

RE:  **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202510-31662510
Right to Sue: Flores / AT&T Mobility Services LLC et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for CRD's Small Employer Family Leave Mediation Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave (Government Code sections 12945.2, 12945.6, or 12945.7) has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation.  The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. You may contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

CRD - ENF 80 RS (Revised 2025/02)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

                                                                                        KEVIN KISH, DIRECTOR

Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

October 10, 2025

Steve Flores
c/o Rise Law Firm, 8383 Wilshire Blvd., Suite 800
Beverly Hills, CA 90211

RE:    **Notice of Case Closure and Right to Sue**
       CRD Matter Number: 202510-31662510
       Right to Sue: Flores / AT&T Mobility Services LLC et al.

Dear Steve Flores:

This letter informs you that the above-referenced complaint filed with the Civil Rights
Department (CRD) has been closed effective October 10, 2025 because an immediate
Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

This matter may qualify for CRD's Small Employer Family Leave Mediation
Program. Under this program, established under Government Code section
12945.21, a small employer with 5 -19 employees, charged with violation of the
California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave
(Government Code sections 12945.2, 12945.6, or 12945.7) has the right to
participate in CRD's free mediation program. Under this program both the
employee requesting an immediate right to sue and the employer charged with
the violation may request that all parties participate in CRD's free mediation
program. The employee is required to contact the Department's Dispute
Resolution Division prior to filing a civil action and must also indicate whether
they are requesting mediation. The employee is prohibited from filing a civil
action unless the Department does not initiate mediation within the time period
specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. Contact
CRD's Small Employer Family Leave Mediation Pilot Program by emailing
DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number
indicated on the Right to Sue notice.

CRD - ENF 80 RS (Revised 2025/02)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

### Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Steve Flores                                          CRD No. 202510-31662510

                              Complainant,

vs.

AT&T Mobility Services LLC
14500 Roscoe Boulevard Unit 3
Panorama City, CA 91402

Michelle Boggio

,

                              Respondents
_____

**1.** Respondent **AT&T Mobility Services LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant is naming **Michelle Boggio** individual as Co-Respondent(s).

**3.** Complainant **Steve Flores**, resides in the City of **Beverly Hills,** State of **CA.**

**4.** Complainant alleges that on or about **April 5, 2025**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's disability (physical, intellectual/developmental, mental health/psychiatric), family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies and as a result of the discrimination was terminated, denied work opportunities or assignments, denied accommodation for a disability, denied family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies.

**Complainant experienced retaliation** because complainant requested or used a disability-related accommodation, requested or used family care and medical leave (cfra), related to serious health condition of employee or family member, child bonding, or military exigencies

-1-
*Complaint – CRD No. 202510-31662510*

Date Filed: October 10, 2025

1  and as a result was terminated, denied work opportunities or assignments, denied
accommodation for a disability, denied family care and medical leave (cfra) related to
2  serious health condition of employee or family member, child bonding, or military exigencies.

3

4  **Additional Complaint Details:** Steve Flores ("Mr. Flores") was employed by AT&T Mobility
Services LLC (the "Company") for approximately 16 years, beginning around October 2008
5  as a field representative. When corporate restructuring eliminated Mr. Flores's field
representative position, the Company offered him the choice between accepting a
6  severance package or transitioning to a sales consultant position at a corporate retail store.
Mr. Flores decided to accept the sales consultant position and began working in this
7  capacity at a retail store in Northridge in or around 2013 or 2014. Due to Mr. Flores's
exceptional performance he was promoted to Assistant Store Manager in or around 2019.
8  Thereafter, Mr. Flores successfully helped manage multiple other stores including Woodland
Hills, North Hollywood, and ultimately the company store located at 14500 Roscoe
9  Boulevard Unit 3 Panorama City, CA 91402 (the "Store"). Mr. Flores worked as an Assistant
Manager at the Store until the unlawful termination of his employment on or about April 5,
10  2025.
During Mr. Flores's tenure as Assistant Manager at the Store, he encountered significant
11  challenges managing Kevin Archilla ("Archilla"), a Sales Consultant with a well-documented
history of insubordination, disruptive behavior, and conflicts with management personnel
12  and other employees at various stores. Even though Archilla had established a reputation as
a "hothead" and was known to be problematic within the Company, he was protected by the
13  union. Mr. Flores and Archilla had previously worked together as sales consultants at the
Northridge location, where they maintained a cordial professional relationship. However,
14  after Mr. Flores's promotion and assignment to various management positions, their
interactions diminished until they were eventually assigned to the Store together. There,
15  Archilla's confrontational attitude manifested towards Mr. Flores.
In or around late 2023, Mr. Flores experienced the first of two workplace incidents with
16  Archilla. During this incident, in accordance with his duties as Assistant Manager, Mr. Flores
assigned Archilla a work-related task. Rather than complying, Archilla was insubordinate,
17  refused to follow Mr. Flores's directive, got in Mr. Flores's face, and repeatedly asked "What
are you gonna do about it?" in an antagonistic manner. Mr. Flores calmly asked Archilla to
18  get out of his face and told him he needed to leave, but Archilla continued his hostile
behavior for several minutes until he eventually departed of his own accord. This incident
19  occurred on the sales floor in the presence of other employees, including Daniel Lopez
("Lopez").
20  Subsequently, per the Company's policy Mr. Flores reported the incident to Store Manager
Daisy Chavez ("Chavez"). However, Chavez failed to document it despite her duty to do so.
21  Archilla later apologized to Mr. Flores for his behavior and the situation blew over, so Mr.
Flores never followed up with Chavez about documenting his file.
22  Approximately one year later, in late 2024, a second incident with Archilla occurred. As part
of his managerial duties, Mr. Flores was responsible for following up with customers
23  regarding sales transactions to ensure satisfaction and address any service or installation
issues. During this period, Archilla sold television and internet services to a customer, but
24  the installer failed to show up – something that happened from time to time. When Mr.

25

26                                    -2-
27
Date Filed: October 10, 2025
28

CRD-ENF 80 RS (Revised 2025/02)

Flores called the customer to follow-up, he was unable to reach her because her voicemail had not been set up. Eventually, Mr. Flores got a hold of the customer, and she expressed frustration towards the Company. This particular sale held special significance for Archilla, as he historically struggled with television and internet sales. When Archilla learned that the installation failed to occur and that the customer was upset, he directed his anger toward Mr. Flores, inappropriately blaming him for the failed installation and demanding that he should have been more proactive in preventing the issue. When Mr. Flores explained that he had indeed attempted to contact the customer but was unable to leave a voicemail, Archilla refused to accept his explanation and, once again, escalated his behavior to an unacceptable level of disrespect and insubordination. Mr. Flores directed Archilla to clock out and leave the premises for the remainder of the workday, however, he defiantly refused. Another Assistant Manager, Eddie Tinajero ("Tinajero") and an employee, William Garcia ("Garcia"), both witnessed Archilla's unprofessional conduct from their positions at the computer workstation. Eventually, Tinajero had to assist Mr. Flores in getting Archilla to leave for the day.

Following the incident, Michell Boggio ("Boggio"), the District Manager, contacted Mr. Flores and instructed him to document it, stating she wanted to use it to terminate Archilla. Boggio specifically instructed Mr. Flores to exaggerate his account and claim that he "feared for his life." Boggio had an antagonistic and bullying management style and even though Mr. Flores felt pressured to satisfy her, he refused to embellish what had happened, stating he would only tell the truth.

During a subsequent investigation into the incident, Mr. Flores provided a truthful account of what had occurred without exaggeration. In his statement to the investigator, Mr. Flores honestly characterized Archilla as unpredictable and volatile while also acknowledging that he could also be sweet sometimes depending on the day and his mood which affected what version you got.

Upon learning about Mr. Flores's statements to the investigator, Boggio expressed significant displeasure to Mr. Flores, questioning why he had mentioned Archilla's occasional pleasant behavior and failed to fabricate the threat to his life as she had instructed. Mr. Flores merely responded that all he did was tell the truth.

Sometime thereafter, the investigator contacted Mr. Flores again, this time to discuss the 2023 incident with Archilla. During their conversation, Mr. Flores learned that Archilla had falsely claimed that Mr. Flores had yelled and cursed at him on the salesfloor, allegations that Mr. Flores wholeheartedly denied. Mr. Flores explained to the investigator that he had not engaged in any such unprofessional behavior but had simply addressed Archilla's insubordination by sending him home. Mr. Flores did not hear back from the investigator or anyone from the Company about the investigation thereafter.

In addition to his in-store management responsibilities, Mr. Flores conducted door-to-door sales, requiring extensive walking and physical exertion. As a result, Mr. Flores developed severe arthritis in his hip. On or about November 1, 2024, Mr. Flores began a short-term disability / CFRA medical leave of absence due to severe arthritis, stress, and related conditions. Mr. Flores was initially scheduled to return in January 2025, but his leave was extended for an additional three months until April 2025. Mr. Flores properly filed a workers' compensation claim for his work-related medical condition.

Within one week of Mr. Flores going on medical leave, Boggio posted and filled his position with a new Assistant Manager, Eric Revuelta ("Revuelta").

-3-
*Complaint – CRD No. 202510-31662510*

Date Filed: October 10, 2025

CRD-ENF 80 RS (Revised 2025/02)

1  In or around the end of March or beginning of April 2025, Mr. Flores received a call from
   Edberg Giron ("Giron"), the new Store Manager (who had replaced Chavez). Giron stated

2  that corporate had indicated that if he did not return to work by April 5, 2025, it would be
   treated as job abandonment. Neither Giron nor anyone else at the Company contacted Mr.

3  Flores to engage in an interactive process or otherwise initiate a discussion regarding
   possible alternative accommodations.

4  Despite continuing to experience pain from his disabilities, Mr. Flores returned to work on or
   about April 5, 2025 to avoid job abandonment. On the same day Mr. Flores returned to

5  work, after working for approximately one hour, the Company terminated his employment.

6  Giron stated that the termination was based on the 2023 incident with Archilla, claiming
   there was a witness who said Mr. Flores had been "talking back" to Archilla. Giron admitted

7  to Mr. Flores that he believed Mr. Flores's version of events but stated "this is what Boggio
   wants."

8  Notably, Archilla had been terminated while Mr. Flores was on medical leave due to a
   separate incident with yet another manager.

9  Mr. Flores alleges that the Company discriminated and retaliated against him based on his
   disabilities (actual and/or perceived) and for requesting reasonable accommodations for his

10 disabilities. Specifically, the Company terminated Mr. Flores's employment based on his
   disabilities (actual and/or perceived) and for requesting reasonable accommodations related

11 thereto the same day he returned from a short-term disability / CFRA medical leave of
   absence for pretextual reasons.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

*Complaint – CRD No. 202510-31662510*

Date Filed: October 10, 2025

CRD-ENF 80 RS (Revised 2025/02)

1 | VERIFICATION

2 | I, **Elissa A. Waizman,** am the **Attorney** in the above-entitled complaint. I have read
3 | the foregoing complaint and know the contents thereof. The matters alleged are based
   | on information and belief, which I believe to be true. The matters alleged are based
4 | on information and belief, which I believe to be true.

5 | On October 10, 2025, I declare under penalty of perjury under the laws of the State of
   | California that the foregoing is true and correct.
6 |

7 | **Los Angeles, CA**

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 | -5-

*Complaint – CRD No. 202510-31662510*

27 | Date Filed: October 10, 2025

28 |